Samuel H. Hoestadter, J.
The petitioner employer applies for a stay of arbitration under a collective bargaining agreement demanded by the labor union; the union cross-moves for a direction that the arbitration proceed. The sole question before the court is whether the dispute is arbitrable under the agreement.
The collective bargaining agreement made on February 2, 1959 became effective on that date and was to remain in force until June 19,1962. It is a carefully drawn document and covers in detail the various subjects usually found in collective bargaining agreements. Under the heading of “ Wages ” the employer agrees not alone that the wages of the employees will not be reduced during the term of the agreement but that “ general *1011 wage increases ” of specific percentages are to be granted and paid from definite dates during the continuance of the agreement. Grievance procedure is set up with the following arbitration clause: 19 (d) “In the event that no agreement is reached after the above-mentioned procedure has been followed, then the grievance, difference or dispute, only insofar as it relates to the interpretation and/or application of the provisions of this contract, shall be subject to arbitration. * * * The arbitrator shall not have the power to modify or change any of the provisions of this contract.”
The employer and the respondent union have been operating under successive agreements since 1944 and during this period the employer has at Christmas each year until 1960 paid the employees a bonus based on a specific formula. The employer paid a Christmas bonus in 1960 but the amount was one third less than it would have been if computed in accordance with the past formula. In June, 1961, the union filed with the National Labor Relations Board a charge of unfair labor practice asserting that the employer had withheld the bonus from the employees “for the purpose of dissipating their union interests” and had refused to bargain with respect to this bonus. Following the issuance of a formal complaint on which a hearing was held on September 25, 1961, the board withdrew the complaint for reasons not related to its merits. Thereupon, on October 11, 1961, the union initiated arbitration under the collective bargaining agreement by letter to the New York State Board of Mediation in which it claimed that the decrease in the amount of the Christmas bonus was ‘1 in violation of the contract between the Union and the Employer and/or the established past practice.” The right to pursue this arbitration is here to be determined.
As already stated, the employer paid the Christmas bonus uninterruptedly over a period of years; yet, neither the current collective bargaining agreement nor any of its predecessors mentions a bonus or binds the employer to continue it. Though the employees may not unnaturally have looked to the bonus, nevertheless its payment does not appear to have been anything other than a purely voluntary act of the employer.
It is to be noted at the outset that the arbitration clause of the agreement is not all-embracing but is rather restricted. It permits arbitration of a dispute “ only insofar as it relates to the interpretation and/or application of the provisions of this contract ” (emphasis supplied) and denies the arbitrator the power “to modify or change” any of its provisions. The clause is substantially identical with that applied in Matter *1012 of Western Union Tel. Co. (American Communications Assn., CIO) (299 N. Y. 177). It is, of course, axiomatic that no one need submit to arbitration unless he has by agreement bound himself to do so and then only to the extent that the controversy comes within the scope of the arbitration clause. The question whether it does is generally to be determined by the court (Matter of General Elec. Co. [United Elec. Radio & Mach. Workers of America, C. I. O.], 300 N. Y. 262), and the mere assertion by a party of the existence of a dispute under an agreement will not foreclose judicial inquiry as to its genuineness (Matter of Essenson [Upper Queens Med. Group], 307 N. Y. 68). The rule is clear enough; its application in a given case, however, often poses a perplexing problem and leads to difference of opinion (Matter of S & W Fine Foods [Office Employees Int. Union, Local 153], 8 A D 2d 130; Matter of Wagner [Russeks Fifth Ave.], 281 App. Div. 825). On which side of the line does the present case fall?
The dispute here is very similar to that in the Cutler-Rammer case in which the claim of the arbitrability of a bonus was rejected. If anything, Cutler-Hammer presented a stronger case for arbitration, for the agreement specifically obligated the employer to discuss the payment of a bonus with the union (Matter of International Assn. of Machinists [Cutler-Hammer, Inc.], 271 App. Div. 917, affd. 297 N. Y. 519). Here the agreement does not mention bonus at all.
The question was ruled on again in the Rollander case in which the dispute was closely analogous to the present one. The union there sought to collect severance pay and pensions for the employees who had lost their jobs as the result of the permanent shutdown of a plant by the employer. The collective bargaining agreement said nothing about severance pay and pension rights were governed by a separate agreement. No claim was made that the employer had not fully met his obligations under the pension agreement. It was held that the union’s demand for severance pay with which the employer refused to comply did not create a dispute which was arbitrable under the collective bargaining agreement (Matter of Lloyd [Hollander & Son], 17 Misc 2d 180, affd. 8 A D 2d 801). Hollander is not distinguishable in principle from this case. It is not without interest that in Rollander, too, the union pointed to the employer’s refusal to bargain or negotiate.
The union argues further that the bonus must be considered part of wages and that, so viewed, the cutting of the Christmas bonus was a reduction in wages under the agreement. The cases cited in support of this contention are inapposite; they *1013 involved the issue of the employer’s duty to bargain collectively (Singer Mfg. Co. v. National Labor Relations Bd., 119 F. 2d 131, cert, denied 313 U. S. 595; National Labor Relations Bd. v. Niles-Bement-Pond Co., 199 F. 2d 713; National Labor Relations Bd. v. Stow Mfg. Co., 103 NLRB 1280). The duty to bargain differs fundamentally from the duty to arbitrate in that, so long as the employer acts in good faith, he is under no compulsion to agree to terms which he finds incompatible with good business judgment (National Labor Relations Bd. v. Niles-Bement-Pond Co., supra, p. 715). Once, however, the issue is found arbitrable, the employer is under the duty to comply with the award, whatever the burden which it imposes upon him.
The collective bargaining agreement between these parties places in distinct categories the various economic benefits of the employees under it, such as, for example, paid sick leave, wages, night shift differential, group insurance, retirement payments and pensions, and prescribes in detail the employer’s obligations in each category. It even deals separately with “Wages” and “Classification and Wage Rates”. There is no mention anywhere of bonus or the slightest suggestion that either party contemplated that the Christmas bonus paid voluntarily by the employer was within the provisions of the agreement. It clearly was not and, therefore, may not be made the subject of an arbitrable dispute under it. It follows that the petitioner’s motion for a stay must be granted and the cross motion to direct arbitration denied.